**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GERARDO FIGUEROA,**

                                        **Plaintiff,**

        **-against-**                                        **08-CV-868**

**TRI-CITY HIGHWAY PRODUCTS, INC.**
**and MARTIN A. GALASSO, JR.,**

                                **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiff commenced this action asserting that he was retaliated against at his place

of employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), New York

Executive Law § 296(1)(e) ("N.Y. Human Rights Law § 296"), and New York Labor Law §

215.  Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56.

Plaintiff has opposed the motion although his papers are not in compliance with the

dictates of the Local Rules.  For the reasons that follow, Defendants' motion is granted.

**II.     STANDARD OF REVIEW**

        It is well settled that on a motion for summary judgment, the Court must construe

the evidence in the light most favorable to the non-moving party, see Tenenbaum v.

1

Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). While the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor, Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002), a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994); Fed. R. Civ. P. 56(e).

The Local Rules of the Northern District provide a procedure for the resolution of summary judgment motions. See N.D.N.Y.L.R. 7.1(a)(3). This places the onus on the parties to present the evidence that either supports or defeats the motion. Both motions

for, and in opposition to, summary judgment "require a memorandum of law, supporting affidavit, and proof of service on all the parties." <u>See</u> N.D.N.Y.L.R. 7.1(a).

A movant must also set forth the undisputed facts that, it contends, entitles it to summary judgment in a Statement Of Material Facts Not in Dispute. <u>See</u> N.D.N.Y.L.R. 7.1(a)(3). Once a properly supported Local Rule 7.1(a)(3) Statement of Material Facts is submitted, the non-moving party must "file a response to the [movant's] Statement of Material Facts." <u>Id.</u> This requires a statement that "mirror[s] the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." <u>Id.</u> <u>"The Court shall deem admitted any facts set forth in the [movant's] Statement of Material Facts that the opposing party does not specifically controvert.</u>" <u>Id.</u> (emphasis in original). The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly. <u>See</u> <u>Van Loan v. Hartford Acc. and Indem. Co.</u>, 2006 WL 3782709 at *2 (2d Cir. 2006)(deeming movant's properly supported and unopposed allegations admitted by opposing party); <u>N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.</u>, 426 F.3d 640, 648–49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of movant's factual assertions and failed to include any record citations."); <u>Gubitosi v. Kapica</u>, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (<u>per curiam</u>)(accepting as true material facts contained in unopposed local rule statement of material facts).

Plaintiff's opposition to Defendants' motion consists merely of an affidavit accompanied by extraneous exhibits. <u>See</u> Response in Opposition [dkt. # 48]. He has

3

submitted neither the required memorandum of law in opposition to Defendants' motion, nor the required response to Defendants' Statement of Material Facts. See N.D.N.Y.L.R. 7.1(a)(3).

## III.    BACKGROUND

Due to Plaintiff's failure to respond to Defendants' motion in accordance with the Local Rules, the properly supported facts in Defendants' Statement of Material Facts are deemed admitted and constitute the undisputed facts on this motion.  See N.D.N.Y.L.R. 7.1(a)(3); Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree . . . that FED. R. CIV. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000)(Local rules requiring Statements of Material Facts are "designed to place the responsibility on the parties to clarify the elements of the substantive law which remain at issue because they turn on contested facts. . . . While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.").  These facts, relevant to the instant motion, are as follows.

Tri-City Highway Products, Inc. ("Tri-City") is in the business of producing and delivering construction materials for state, municipal and commercial clients in New York and Pennsylvania.  Its main product is hot-mix asphalt which is produced in its own asphalt production plant.  Tri-City's operations are seasonal, running from approximately April to early November depending on the weather and number of projects in which Tri-

4

City is engaged.  Tri-City hires a fleet of drivers each season and lays off all drivers at the

end of each season.  The number of drivers hired each season is determined by the

company's needs.

Plaintiff was initially hired by Tri-City on April 18, 2006 to drive a tri-axle dump truck.

After the 2006 season concluded, all Tri-City drivers, including Plaintiff, were laid off.

Plaintiff was apparently told that he would be rehired for the 2007 season.  After being laid

off, Plaintiff filed a claim of race and national origin discrimination against Tri-City with the

New York State Division of Human Rights (hereinafter "Division") on January 16, 2007

(hereinafter "*Figueroa I*").  After a hearing was held on his complaint, the administrative

law judge ("ALJ") issued a Recommended Findings of Fact, Opinion and Decision

dismissing the complaint in its entirety.  As of the date of the submissions on the instant

motion, the Division had yet to accept or reject the ALJ's recommendations.

Plaintiff was offered employment by Tri-City for the 2007 season.  He accepted and

began working on April 9, 2007.  Plaintiff was repeatedly late to work during the 2007

season.  In addition, Plaintiff repeatedly refused to abide by the employer's parking rules

for his company truck.[1]  When Plaintiff's superior addressed his failure to park his truck

where instructed, Plaintiff argued with him using profanity.

As a result of his pattern of tardiness and his insubordination regarding the parking

rules, Plaintiff was issued a letter of counseling on August 20, 2007.  Plaintiff was not

terminated, did not lose any pay, did not experience any reduction in hours or overtime, or

---

[1]Tri-City truck drivers are instructed to park their Tri-City vehicles in a specific way due to the space constraints at Tri-City, safety considerations, and to provide a certain appearance of order as required by the owner.  During both the 2006 and 2007 seasons, Plaintiff repeatedly refused to park his Tri-City vehicle in its assigned spot as he was instructed by his superiors.  Plaintiff's refusal to properly park his vehicle caused a problem in the lineup of the parked vehicles of other drivers.

otherwise experience a change in the terms and conditions of his employment as a result of the August 20, 2007 letter of counseling.  During the conversation about the letter of counseling, no reference was made to Plaintiff's prior complaint to the Division.  After receiving the August 20, 2007 letter of counseling, Plaintiff continued to work for Tri-City for the remainder of the 2007 season.

On August 24, 2007, Plaintiff filed a second Verified Complaint against Tri-City with the Division alleging race discrimination and unlawful retaliation (hereinafter "*Figueroa II*"). Only two discrete issues were raised by Plaintiff in *Figueroa II*: (1) his receipt of the August 20, 2007 a letter of counseling for tardiness and insubordination; and (2) the location on Tri-City's premises where Plaintiff was instructed to park his Tri-City vehicle.

At the end of the 2007 season, Plaintiff and all other Tri-City drivers were laid off. Tri-City advised Plaintiff that it anticipated bringing him back for the 2008 season.  Plaintiff was sent a letter inviting him to attend a "Commercial Driver Safety Meeting" on March 4, 2008 at Tri-City's corporate headquarters, which he attended.[2]

On March 25, 2008, the Division issued a "No Probable Cause" determination relative to *Figueroa II*.  The Division's determination was adopted by the United States Equal Employment Opportunity Commission ("EEOC") which issued Plaintiff a "Dismissal and Notice of Rights" letter dated May 9, 2008.   This "Dismissal and Notice of Rights" letter is attached to the Complaint in the instant action.

At the start of the 2008 season, Tri-City's hiring needs turned out to be less than anticipated.  In early April 2008, Tri-City offered employment to only four (4) drivers.

---

[2]All drivers that Tri-City anticipates offering employment to during the upcoming season are required to attend the Commercial Driver Safety Meeting.

These four drivers were hired by Operations Manager Jim Miller because each had the experience, training and/or qualifications necessary to operate the two types of vehicles that were needed for the first project of the year - "Flow-boys" and tri-axle dump trucks with attached "pup" trailers.  Plaintiff was not hired at the beginning of April 2008 because Mr. Miller did not believe that Plaintiff had any experience operating "Flow-boys" or tri-axle dump trucks with attached "pup" trailers.

On April 25, 2008, Plaintiff showed up on Tri-City's premises unannounced and demanded to know when he was returning to work.  Both Martin Galasso, Tri-City's President, and Mr. Miller assured Plaintiff that he would be hired when work became available.   On April 30, 2008, Plaintiff filed a third complaint of discrimination with the Division (hereinafter "*Figueroa III*").  In *Figueroa III*, Plaintiff claimed that Tri-City hired other drivers before him at the beginning of the 2008 season in retaliation for his prior complaints of discrimination and retaliation with the Division.

Within a few days of Plaintiff's filing of the complaint in *Figueroa III*, Plaintiff was observed working for one of Tri-City's competitors, Broome Bituminous Products, Inc. Although Tri-City continued to hire drivers through the months May and June, 2008, Plaintiff was not hired for the 2008 season because he was seen driving for Tri-City's competition.

Plaintiff commenced the instant action on August 13, 2008 alleging claims of unlawful retaliation pursuant to Title VII,  N.Y. Human Rights Law § 296, and New York Labor Law § 215

On January 29, 2009, the Division issued a Determination and Order After Investigation finding "No Probable Cause" to believe that Tri-City had engaged in an

7

unlawful discriminatory practice as alleged in *Figueroa III*.   Plaintiff received a "right to

sue" letter from the EEOC on June 29, 2009 relative to *Figueroa III*, but, Defendants

assert, no suit has been filed in a court of law with respect to *Figueroa III*.

**IV.     DISCUSSION**

> **a.  New York Human Rights Law Claims**

Defendants argue that Plaintiff's N.Y. Human Rights Law § 296 retaliation claim is

barred by Plaintiff's election of remedies. The Court agrees.

New York Executive Law § 297(9) provides, in pertinent part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice
> shall have a cause of action in any court of appropriate jurisdiction . . .
> **unless** such person had filed a complaint hereunder or with any local
> commission on human rights . . . **provided** that, where the division has
> dismissed such complaint on the grounds of administrative convenience, on
> the grounds of untimeliness, or on the grounds that the election of remedies
> is annulled, such person shall maintain all rights to bring suit as if no
> complaint had been filed with the division.

N.Y. Exec. Law § 297(9)(emphasis added).

"[O]nce a complainant elects the administrative forum by filing a complaint with the

[New York State Division of Human Rights], a subsequent judicial action on the same

complaint is generally barred unless one of the three exceptions in the statute is

applicable." Johnson v. County of Nassau, 411 F. Supp.2d 171, 184 (E.D.N.Y. 2006).

Here, Plaintiff previously filed two retaliation complaints with the Division, *Figueroa II and*

*Figueroa III,* neither of which were dismissed on the grounds of administrative

convenience, untimeliness, or that the election of remedies was annulled.  Thus, pursuant

to New York Executive Law § 297(9), Plaintiff's claims of retaliation brought under the New

York Executive Law are barred.  See Johnson, 411 F. Supp.2d at 184.  "The bar to suit is

8

jurisdictional." Id. (citing Moodie v. Federal Reserve Bank of N.Y., 58 F.3d 879, 883-884 (2d Cir. 1995)).   Accordingly, Plaintiff's claims of retaliation brought pursuant to N.Y. Human Rights Law § 296 are dismissed.

### b.  New York State Labor Law Claims

Defendants also argue that Plaintiff's New York Labor Law § 215 retaliation claim must be dismissed because there is no factual predicate for the claim.  The Court agrees.

To state a retaliation claim under New York Labor Law § 215, "a plaintiff must adequately plead that while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result."  Higueros v. New York State Catholic Health Plan, Inc., 526 F. Supp.2d 342, 347 (E.D.N.Y. 2007); see also N.Y. Lab. L. § 215.[3]   According to the undisputed facts, Plaintiff never made a complaint to Tri-City, or the Department of Labor, claiming that Tri-City had violated the New York Labor Law, and Plaintiff had never participated in any Department of Labor investigation while employed by Tri-City.  Because there was no labor law complaint involving Plaintiff, retaliation for such a non-existent complaint is impossible.

---

[3]New York Labor Law § 215 provides, in pertinent part:

> No employer . . . shall discharge, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, that the employer has violated any provision of this chapter, or (ii) because such employee has caused to be instituted a proceeding under or related to this chapter, . . . or (iv) because such employee has testified or is about to testify in an investigation or proceeding under this chapter, or (v) because such employee has otherwise exercised rights protected under this chapter . . . .

N.Y. Lab. Law § 215(1)(a).

Accordingly, Plaintiff's claim of discrimination brought pursuant to New York Labor Law § 215 is dismissed.

### c.  Title VII - Individual Liability

Next, Defendants argue that the Title VII claims against Martin A. Galasso, Jr. must be dismissed.  The Court agrees.

In Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995), the United States Court of Appeals for the Second Circuit ruled that individuals who are not employers may not be held liable under Title VII.  Here, Plaintiff's employer was Tri-City Highway Products, Inc.   Accordingly, all Title VII claims brought against Martin A. Galasso, Jr. are dismissed.

### d.   Title VII claim - Employer Liability

Finally, Defendants argue that the remaining Title VII retaliation claims must be dismissed.  Again, the Court agrees.

### 1.  *McDonnell Douglas* Burden-Shifting Analysis

Title VII of the Civil Rights Act of 1964 provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

When a court is presented with the task of analyzing a claim of retaliation brought pursuant to Title VII, the claim is subject to the burden shifting analysis established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–804 (1973).  Gorzynski v. Jetblue

Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010).  Under the McDonnell Douglas analysis, a

plaintiff must first establish a *prima facie* case of retaliation.  Collins v. New York City

Transit Authority, 305 F.3d 113, 118 (2d Cir. 2002).

To make out a *prima facie* case for retaliation under Title VII, a plaintiff must

establish:

> (1) that []he engaged in protected activity under [Title VII], (2) that the
> employer was aware of this activity, (3) that the employer took adverse
> action against the plaintiff, and (4) that a causal connection exists between
> the protected activity and the adverse action, *i.e.*, that a retaliatory motive
> played a part in the adverse employment action.

Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir.  2010)(citing

Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006)).

Defendants focus their challenges to Plaintiff's *prima facie* case on the 3rd and 4th prongs.

Thus, the Court will assume, without deciding, that the 1st and 2nd prongs of the *prima facie*

case are satisfied.

An adverse employment action for purposes of the 3rd prong of the *prima facie* case

for a Title VII retaliation claim is an action which "a reasonable employee would have

found . . . materially adverse."  Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S.

53, 68 (2006).  "Materially adverse" means an action which "well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." Id. at 68

(internal citations and quotations omitted).  Such action under Title VII's anti-retaliation

provision, unlike under its substantive anti-discrimination provision, "is not limited to

discriminatory actions that affect the terms and conditions of employment[;] . . . [it's] scope

. . . extends beyond workplace-related or employment-related retaliatory acts and harm."
Burlington Northern & Santa Fe Ry. Co., 548 U.S. at 64, 67.

On the 4th prong of the *prima facie* case, causation can be shown: "(1) indirectly, by
showing that the protected activity was followed closely by discriminatory treatment, or
through other circumstantial evidence such as disparate treatment of fellow employees
who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus
directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232
F.3d 111, 117 (2d Cir. 2000).   Here, there is no direct evidence of retaliatory animus.
When temporal proximity is the sole basis of causation, time between the employer
learning of the protected activity and the adverse employment action must be "very close."
Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001)(quoting O'Neal v.
Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)).  Plaintiff's burden of
establishing a *prima facie* case is *de minimis.* Beyer v. County of Nassau, 524 F.3d 160,
163 (2d Cir. 2008).

If the plaintiff makes out a *prima facie* case, the burden of production shifts to the
employer to rebut this presumption by articulating a legitimate, nondiscriminatory reason
for its actions. Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008).  If the employer
proffers a legitimate, nondiscriminatory reason for the challenged employment action, "the
presumption raised by the *prima facie* case is rebutted, and drops from the case." St.
Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).  The burden shifts back to the
plaintiff who "then has the opportunity to demonstrate 'that the proffered reason was not
the true reason for the employment decision,' and that [unlawful retaliation] was." Fisher

v. Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997)(en banc), cert. denied, 522 U.S. 1075 (1998).  The ultimate burden of persuasion remains always with the plaintiff.  St. Mary's Honor Ctr., 509 U.S. at 507, 511.  In determining whether the plaintiff can satisfy this ultimate burden, a court must examine the entire record and apply "a case-by-case approach." Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000).

### 2. Plaintiff's Claims of Retaliation

Plaintiff asserts that he was retaliated against by several actions by the employer. These were that the Defendants: (1) failed to put him to work at the beginning of the 2008 season; (2) altered the computer in his company truck in 2007 so that the truck was capable of exceeding the speed limit, and then monitored his trip times to see if he had in fact exceeded the speed limit; (3) checked his truck tires at each job site to see if they were overheating; (4) prohibited him from using diesel fuel to prevent blacktop accumulation on his truck; (5) started checking his "time in" and "time out"; (6) started making him sign a warning "when he signed out late;" and (7) started making him park separately from other trucks and at a distance from the building.  Compl. ¶ 8.

Defendants argue that: (1) none of the allegations other than the parking location issue can be considered because they were not raised in *Figueroa II*, the administrative complaint which is the predicate of the instant action; (2) the alleged actions, except for the failure to rehire allegation, do not constitute adverse actions sufficient to establish a *prima facie* case; and (3) the failure to rehire Plaintiff at the start of the 2008 season is too attenuated in time to establish a casual connection to the *Figueroa II* complaint.

13

The allegations asserted in the Complaint could conceivably be deemed to be "reasonably related" to the administrative complaint in *Figueroa II,* see Ximines v. George Wingate High School, 516 F.3d 156, 158 (2d Cir. 2008);[4] Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 178 (2d Cir. 2005)("A complaint of retaliation could reasonably be expected to inquire into other instances of alleged retaliation by the same actor.")(citation, internal quotation marks, and brackets omitted), and, with the exception of the allegation regarding the failure to rehire Plaintiff in 2008, all seem to be sufficiently close in time to the complaint in *Figueroa II* to satisfy temporal proximity for purposes of the 4th prong of the *prima facie* case.  The Court will address each asserted retaliatory act to determine whether it constitutes an adverse employment action, and the temporal proximity of the 2008 non-hiring decision, when it  addresses the claims below.

### i. Alteration to Plaintiff's truck engine/Monitoring of Trip Times

Plaintiff alleges that Defendants altered his vehicle's engine to allow it to go faster,

---

[4]As stated in Ximines:

This Circuit has recognized that a claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.  In this inquiry, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving. The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases. The reasonably related exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering.

516 F.3d at 158 (internal citations, alterations, and quotations marks omitted).

14

and then monitored his trip times to see if he exceeded the speed limit.[5]  The uncontested

facts reveal, however, that Plaintiff was not compelled by Tri-City to exceed the speed

limit, he was never disciplined concerning his speed, and Tri-City periodically examines all

drivers' trip times to ensure appropriate performance.  Plaintiff's allegations do not

establish that he suffered an adverse employment action by the employer's monitoring of

his work performance.  See, e.g., Honey v. County of Rockland, 200 F. Supp.2d 311, 320-

21 (S.D.N.Y. 2002)("courts in this circuit have found that . . . excessive scrutiny do[es] not

constitute adverse employment action[] in the absence of other negative results such as

decrease in pay or being placed on probation"); Davis v. Verizon Wireless, 389 F. Supp.2d

458, 478 (W.D.N.Y. 2005)("increased scrutiny or general monitoring does not rise to the

level of an adverse employment action"); Hussain v. Principi, 344 F.Supp.2d 86, 104-05

(D.D.C. 2004)("[m]onitoring of an employee cannot be an adverse action since it is part of

the employer's job to ensure that employees are safely and properly carrying out their

jobs").

Further, the employer's uncontested position that it examined Plaintiff's trip times,

as it does with all drivers, to ensure proper performance satisfies the employer's burden

on the second prong of the McDonnell Douglas test.  Plaintiff has offered insufficient

evidence from which a reasonable fact finder could conclude that the employer's proffered

reason for the monitoring of his trip times was not the true reason and that unlawful

discrimination was.  Plaintiff's "feelings and perceptions of being discriminated against are

_____

[5]Apparently, the trucks were equipped with some sort of computer-controlled governor that limited the trucks' speed.  Plaintiff alleges that a Tri-City employee connected a lap-top computer to the truck he was driving and then told him that the truck could now travel at speeds in excess of the 65-mile-per-hour speed limit.

not evidence of discrimination." Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir.

1999)(citation omitted); see id. at 448;[6] Richardson v. New York State Dep't, of

Correctional Service, 180 F.3d 426, 447 (2d Cir. 1999)(affirming summary judgment for

employer where employee offered only her own general claim of discrimination to show

that the employer's legitimate reason for terminating her was pretextual). No reasonable

fact finder could conclude that Plaintiff was retaliated against by the employer's action

relative to monitoring his trip times. Because Plaintiff has failed to establish facts from

which a reasonable fact finder could conclude that Plaintiff satisfied his ultimate burden of

proving unlawful retaliation, his Title VII claim in this regard is dismissed.

### ii.   Defendant checked Plaintiff's tire heat

Plaintiff also alleges that he was retaliated against for his previously filed

complaints with the Division by the employer "checking [his] tires at each job sight [*sic*] for

overheating . . . ." Compl. ¶ 8. The uncontested facts reveal, however, that Tri-City

randomly checks the temperature of the tires on all its trucks and off-road equipment to

assure proper vehicle and driver performance,[7] that Tri-City has been randomly checking

the temperature of its vehicles' tires since prior to Plaintiff's employment, and that the

_____

[6] As indicated in Bickerstaff, on a motion for summary judgment the Court:

must also carefully distinguish between evidence that allows for a reasonable inference of
discrimination and evidence that gives rise to mere speculation and conjecture.  This
undertaking is not one of guesswork or theorization.  After all, an inference is not a suspicion
or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the
basis of another fact that is known to exist. Thus, the question is whether the evidence can
reasonably and logically give rise to an inference of discrimination under all of the
circumstances.

Bickerstaff, 196 F.3d at 448 (internal quotation marks and citations omitted).

[7] Defendants' Local Rule 7.1(a)(3) Statement indicates that this type of heat analysis is a factor of tire
failure prediction as well as driver performance.

employer checked Plaintiff's tires in accordance with the company's long-standing practice.  Plaintiff has offered insufficient evidence from which a reasonable fact finder could conclude that he suffered an adverse employment action by the employer's action in checking his tires.

In addition, the employer's contention that safety concerns were the motivation for checking the tires satisfies its burden on the second prong of the McDonnell Douglas test. Plaintiff has failed to offer sufficient evidence to support the proposition that safety concerns were not the true reason for the employer's actions.   Simply stated, Plaintiff has failed to offer sufficient evidence for a reasonable fact finder to conclude that he was unlawfully retaliated against by the employer's actions in checking the tires of his vehicle for overheating. The claim in this regard is dismissed.

### iii.  Defendant prohibited Plaintiff from using diesel fuel

Plaintiff alleges the employer retaliated by "prohibiting [him] from using diesel fuel to prevent blacktop accumulation on [his] truck . . . ."  See Compl. ¶ 8.  The undisputed facts reveal, however, that all Tri-City drivers are annually instructed that diesel fuel is not to be used as an asphalt lubricant and that Tri-City offers its drivers a non-toxic lubricant to avoid asphalt accumulation.  When Plaintiff questioned his superior as to why he was prohibited from using diesel fuel in this manner, he was told that it was against the law. Moreover, Plaintiff was never disciplined or terminated for using diesel fuel as an asphalt lubricant during his employment with Tri-City.

The employer's conduct in enforcing a company policy that, apparently, is in compliance with the law, does not establish an adverse employment action.  Further, the contention that the employer enforced the policy on all employees satisfies Defendants'

burden on the second prong of the <u>McDonnell Douglas</u> test.  Plaintiff has offered

insufficient evidence upon which a reasonable fact finder could conclude that the

employer's motive in enforcing its long-standing policy to all workers was a desire to

retaliate against Plaintiff for his complaints of discrimination.   Plaintiff's claim in this regard

is dismissed.

### iv.  Defendant checked Plaintiff's time in and out

Plaintiff alleges that the employer retaliated by "checking [his] time in and time out,

[and] started making [him] sign a warning when [he] signed out late . . . ."  <u>See</u> Compl. ¶ 8.

The undisputed facts reveal, however, that Plaintiff was habitually late for work.  Other

than a warning, Plaintiff was never disciplined for his lack of punctuality and never

received a decrease in pay, hours, or ability to receive overtime for noncompliance.

Moreover, the uncontested facts reveal that, given the nature of Tri-City's business, it is

imperative that drivers be ready to deliver the company's product at very precise times so

as to avoid costly back-ups either at the plant or at the job site to which the product is

delivered.  An employee who arrives late or leaves early disrupts the employer's business

plan.  No reasonable fact finder could conclude that the scrutiny upon Plaintiff to ensure

his compliance with the employer's business needs constituted an act of unlawful

retaliation.  Accordingly, the claim in this regard is dismissed.

### v.  Plaintiff required to park separately from other trucks

Plaintiff alleges that the employer retaliated by "requiring [him] to park separately

from other trucks and at a distance on the other side of the building where [he] had to walk

a long way."  <u>See</u> Compl. ¶ 8. The uncontested facts reveal, however, that Plaintiff was

required to park his vehicle in a manner similar to other employees and that the parking

rules were enforced by the employer because of space constraints at Tri-City, for safety purposes, and to provide a certain appearance of order as required by the owner. Moreover, when Plaintiff violated this policy, he only received a letter of counseling for insubordination.  He was not terminated and received no decrease in pay, hours of work, or ability to receive overtime.  Plaintiff has failed to provide sufficient evidence from which a reasonable fact finder could conclude that the employer's legitimate, non-discriminatory reason for enforcing its parking policy was not its true reason and that unlawful retaliation was.  Accordingly, Plaintiff's claim based upon Tri-City's parking requirements is dismissed.

### vi.  Failure to put Plaintiff to work

Lastly, Plaintiff alleges that the employer retaliated against him when it "failed to put [him] to work when the [2008] work season began . . . ."  See Compl. ¶ 8.  The original 2008 non-hire decision (in April 2008 when only 4 drivers were hired) was made eight (8) months after the complaint was filed in *Figueroa II,* was after a period of employment following *Figueroa II* (August 24, 2007 until the end the season in November, 2007), and was after the employer notified Plaintiff that he would be likely be hired in 2008 and instructed him to attend a pre-hiring training class.  Further, the ultimate non-hiring decision (that is, that Plaintiff would not be hired in 2008) was made after Plaintiff was seen working for a competitor.  The circumstantial evidence of a retaliatory motive is hardly compelling*,* see Bennett v. Goord, 343 F.3d 133, 139 (2d Cir. 2003)("[W]here . . . circumstantial evidence of a retaliatory motive is sufficiently compelling, direct evidence is not invariably required."), and, while neither the Second Circuit nor the district courts within this Circuit have "drawn a bright line to define the outer limits beyond which a temporal

relationship is too attenuated to establish [such] a casual relationship. . . .," <u>Gorman-Bakos v. Cornell Coop. Extension of Schenectady County</u>, 252 F.3d 545, 554, 555 n.5 (2d Cir. 2001), case law "uniformly hold[s]" that the temporal link "must be very close." <u>Clark Co. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001).  "Courts have generally concluded that 'a passage of two months between the protected activity and the adverse employment action seems to be the dividing line.'" <u>Levitant v. City of New York Human Resources Admin.</u>, 2008 WL 5273992, at *18 (E.D.N.Y. Dec.18, 2008)(quoting <u>Cunningham v. Consol. Edison, Inc.</u>, No. 03 Civ. 3522, 2006 U.S. Dist. LEXIS 22482, at *55-56, 2006 WL 842914 (E.D.N.Y. Mar. 28, 2006) (collecting cases)).  Here, given the circumstances addressed above, the non-hiring decision was too attenuated from the protected activity to satisfy the 4th prong of the *prima facie* case.

Even assuming, *arguendo*, that the non-hiring decision satisfies the 4th prong of the *prima facie* case, the claim based upon this conduct fails under the remainder of the <u>McDonnell Douglas</u> test.  The uncontested facts reveal that Tri-City anticipated hiring Plaintiff for the 2008 season, even inviting him to a company Commercial Driver Safety meeting after *Figueroa II.*  These uncontested facts also reveal that Plaintiff was not hired by Tri-City in April of 2008 because Mr. Miller (Tri-City's Operations Manager) did not believe that Plaintiff had any experience operating "Flow-boys" or tri-axle dump trucks with attached "pup" trailers, the equipment needed for Tri-City's first project of the year.  The four drivers that Tri-City did hire in April of 2008 all had the experience, training and/or qualifications necessary to operate these types of vehicles. "[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the

20

qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination."

Komoroski v. Dept. of Consumer Protection, 2008 WL 4876832, at *1 (2d Cir. Nov. 12, 2008)(citing Tex. Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 259, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981)).  When Plaintiff showed up on Tri-City's premises on April 25, 2008 demanding to know when he was returning to work, both Mr. Galasso and Mr. Miller assured Plaintiff that he would be hired when work became available.  The decision not to rehire Mr. Figueroa was made after he was observed working for Broome Bituminous Products, Inc., one of Tri-City's competitors.  Thus, Defendants assert, the employer's failure to rehire Plaintiff was not a retaliatory act in response to Plaintiff's previous filings with the Division, but was due, originally, to the belief that Plaintiff did not have the capabilities to fulfill the necessary job functions in April 2008, and, ultimately, to witnessing Plaintiff working for the competition (the latter of which Plaintiff admits).

Because the employer has articulated legitimate, nondiscriminatory reasons for its decision not to hire Plaintiff in 2008, the burden shifts back to Plaintiff to demonstrate that the proffered reasons were merely pretextual.  However, Plaintiff has failed to provide sufficient evidence from which a reasonable fact finder could conclude that the employer harbored an unlawful retaliatory motive in its hiring decision.  Plaintiff's claim is based merely upon his speculation that he was discriminated against.  Such speculation is insufficient to defeat Defendants' properly supported motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  According, Plaintiff's claim in this regard is dismissed.

21

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [dkt. # 47] is **GRANTED**, and all claims are **DISMISSED**. The Clerk of the Court is instructed to enter judgment for Defendants and close the file in this matter**.**

**IT IS SO ORDERED**

DATED:September 10, 2010

Thomas J. McAvoy
Senior, U.S. District Judge

22